U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

AUG 1 1 2015

TONY R. MOORE, CLERK
BY _____
           DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| MARY SANDIFER SMITH | CIVIL ACTION NO. 12-2099 |
| -vs- | JUDGE DRELL |
| CHARLES F. WAGNER, ET AL. | MAGISTRATE JUDGE KIRK |

## AMENDED RULING

Before the Court are two Motions for Summary Judgment by Defendants (Docs. 32, 33). The first Motion is made by Defendants William E. Hilton and Charles F. Wagner, and the second by Defendant Lisa Hebb. Plaintiff has responded to each of these motions (Docs. 43, 44), to which responses Defendants have replied (Docs. 45, 46). For the following reasons, Defendants Hilton and Wagner's motion (Doc. 32) will be **GRANTED IN PART,** and Defendant Hebb's motion (Doc. 33) will be **GRANTED IN PART**.

### I.    Background

These motions are before us as part of a lawsuit brought by Plaintiff, Mary Sandifer Smith, against the Defendants for their alleged roles in her arrest at the Rapides Parish Sheriff's Office ("RPSO") in August 2011. Ms. Smith was at the RPSO in an attempt to "bond-out" her son from incarceration. Although Ms. Smith wished to use a property bond to accomplish this, that was not possible because there was insufficient value in the property she wished to use as security. Ms. Smith contends that the shift sergeant who provided her with this information, Sergeant Lisa Hebb,

was initially impolite and unclear during their conversation. According to Sgt. Hebb, Ms. Smith seemed agitated and angry during this conversation. Ms. Smith and her daughter, Jasmyn Page, who had accompanied her to the RPSO, walked away after this conversation, but Ms. Smith soon returned to the desk where Sgt. Hebb was located. The exact contents of the conversation are disputed, but it appears Ms. Smith expressed her displeasure with Sgt. Hebb's treatment. Because Sgt. Hebb believed that Ms. Smith was creating a disturbance, she asked Ms. Smith to leave and informed her that if she did not leave, she would be arrested. When Ms. Smith did not leave, Sgt. Hebb informed her that she was under arrest. Subsequently, Ms. Smith did attempt to leave, and in order to apprehend her, Sgt. Hebb left her desk and entered the hallway.

At this point, as Sgt. Hebb placed Ms. Smith under arrest, Ms. Smith alleges that she forced her against the wall. It is undisputed that there was some struggle at this point and that both Sergeant Hebb and Ms. Smith eventually ended up on the floor of the sheriff's office. In the commotion, Ms. Smith's wig (worn purportedly because she has Alopecia Areata) was knocked off. Ms. Smith asserts that she attempted to crawl away from Sgt. Hebb in order to retrieve her wig, and Sgt. Hebb "jumped on her back" and struck her more than once. Sgt. Hebb states that when she instructed Ms. Smith to put her hands behind her back multiple times, Ms. Smith refused, and ultimately only complied when Sgt. Hebb threatened to tase her. Eventually, Ms. Smith was pulled up off the floor, at which point she alleges Sgt.

Hebb whispered into her ear that she should not have come back. Ms. Smith was then taken into custody, during which time she noticed that a pump device she used to manage her diabetes was missing. Ms. Smith was released after a few hours. When she woke up the next morning she felt acute soreness.

Ms. Smith sued under 42 U.S.C. § 1983, alleging violations of the Fourth Amendment of the United States Constitution by state officials. She also included state law claims for violations of Article 1, § 20 of the Louisiana Constitution, and Louisiana Civil Code article 2315. Finally, she added state law claims for negligence, assault, and battery.

## II. Law & Analysis

### A. Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider all "evidence in the light most favorable to the party resisting the motion." Trevino v. Celanese Corp., 701 F.2d 397, 407 (5th Cir. 1983). However, the non-moving party does not establish a genuine dispute with "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a

3

'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). It is important to note that the standard for a summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

"Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Johnson v. Arkema, Inc., 685 F.3d 452, 469-70 (5th Cir. 2012) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "When the burden at trial rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Compania Mexicana de Aviacion, S.A. de C.V., 199 F.3d 796, 798 (5th Cir. 2000). "[T]he nonmovant may not rely on mere allegations in the pleading" but must "set[] forth particular facts indicating that there is a genuine issue for trial." Id..

### B.     Claims against Sheriff Hilton and Former Sheriff Wagner

1.     *Municipal Liability for Custom or Policy*

Ms. Smith asserts a municipal liability claim under 42 U.S.C. § 1983 against the current and former Sheriffs, alleging that the RPSO "ordered, authorized, acquiesced in, tolerated, permitted, or maintained custom and usages" that permitted Sergeant Hebb to engage in "unlawful and unconstitutional actions, policies, practices, and customs or usages" which thereby resulted in a violation of her Fourth Amendment

rights. "A claim of municipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." Doe v. Covington Cnty. Sch. Dist., 675 F.3d 849, 866 (5th Cir. 2012) (en banc) (internal quotation marks and citation omitted).

Ms. Smith's complaint only makes bare allegations about an official custom of unlawful or unconstitutional actions. Her response to Defendants' Motion for Summary Judgment contains no evidence in support of the existence or non-existence of such policy. The only exhibit referenced in the response is a "report" allegedly made by Lloyd Grafton (a proposed expert witness), which apparently shows:

> [D]uring Sgt. Lisa Hebb's assault on Plaintiff, another officer, a Deputy Bowie, came upon the scene. Bowie heard Plaintiff say she was going back to get Sgt. Hebb's name because she was rude. He then heard Hebb say "You need to leave or I'm going to arrest you." Then Plaintiff responded, "For what? I've done nothing." Bowie then heard Hebb respond, "You need to leave or you are going to jail." Plaintiff then responded, "I'm not going any damn where."

(Doc. 43 at 5). Grafton's report is not attached to the response, but even if it were, the quoted excerpt does not show an official policy, implemented by a policymaker, that violates constitutional rights. Moreover, a deposition of Grafton submitted by Defendants shows that he holds no opinion about the policies and procedures of the RPSO, but that he "would suspect they are appropriate." (Doc. 32-6 at 3). As Ms. Smith has not made any specific allegations or produced any evidence to support a claim that the RPSO had a custom or policy of violating constitutional rights at the

time of her arrest, we we find there is no genuine issue of material fact as to this claim. Defendants are entitled to summary judgment on it.

2. *Municipal Liability for Failure to Train*

Ms. Smith also alleges that Sheriff Hilton and Former Sheriff Wagner are liable in their official and individual capacities under 42 U.S.C. § 1983 for the improper and inadequate training of Sgt. Hebb. A single violation of federal rights can trigger municipal liability when it is "accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 409 (1997), citing City of Canton v. Harris, 489 U.S. 378, 390 (1989). In order for the current and former sheriffs, who were not personally involved in Ms. Smith's arrest, to be liable under § 1983, there must be some causal connection between either sheriff's supervisory actions and the alleged constitutional violation. Specifically, a § 1983 plaintiff must show (1) the sheriff failed to supervise or train the officer, (2) a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's constitutional rights, and (3) this failure amounted to gross negligence or deliberate indifference to the plaintiff's rights. Thompson v. Upshur Cnty, 245 F.3d 447, 459 (5th Cir. 2001). A municipality acts with "deliberate indifference" in adopting a policy if "in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent

6

to the need." <u>Benavides v. Cnty of Wilson</u>, 955 F.3d 968, 972 (5th Cir. 1992).

    Ms. Smith's complaint does not make any specific allegations about the RPSO failing to train Sgt. Hebb, but her response to Defendants' motion asserts that there is "evidence sufficient to raise a material fact issue on . . . failure to train." (Doc. 43 at 5). She alleges that Deputy Bowie's failure to intervene in her arrest shows failure to train because "a proper training program would dictate that an officer intervene and prevent or stop another officer from committing excessive force." (<u>Id.</u>). However, she does not provide any evidence that Sgt. Hebb and other deputies were not trained in the appropriate use of force. In support of their motion, Defendants submit Sgt. Hebb's training records, which show that after she was hired by RPSO, she completed basic officer training as required by law in Louisiana, completed ethics training for public servants, and was trained or retrained in areas such as use of force and defensive tactics. (Doc. 32-8). Ms. Smith points to nothing and has no evidence showing that this training was inadequate or that there was a need for more or different training in addition to that which Sgt. Hebb completed. The conclusory allegations in Ms. Smith's Complaint and Response are not sufficient to create evidence of constitutionally inadequate training at the RPSO. We find that there is no genuine dispute of material fact in this regard, and Defendants are also entitled to judgment as a matter of law on the inadequate training claim.

### C. Claims against Sergeant Hebb

1. *Excessive Force in Violation of the Fourth Amendment*

Ms. Smith alleges that Sgt. Hebb used excessive force when arresting her, in violation of her Fourth Amendment right to be free from unreasonable searches and seizures. Excessive force claims are analyzed under the Fourth Amendment reasonableness standard. Graham v. Connor, 490 U.S. 386, 395 (1989). "To prevail on an excessive force claim, a plaintiff must show: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." Tarver v. City of Edna, 410 F.3d 745, 751 (5th Cir. 2005). Excessive force claims are fact-intensive, and a final determination of whether force was excessive depends on the facts and circumstances of each case. Deville v. Marcantel, 567 F.3d 156, 167 (5th Cir. 2009). Although a plaintiff need not show a significant injury in order to meet the first prong of this analysis, she must allege more than a "de minimis" injury. Williams v. Bramer, 180 F.3d 699, 703 (5th Cir. 1999). Whether an injury is de minimis is evaluated in the context in which the force was deployed. Glenn v. City of Tyler, 242 F. 3d 307, 314 (5th Cir. 2001).

Ms. Smith has alleged injuries in the form of pain and elevated blood sugar, but she submits no medical records nor any other medical evidence in support of her response to Defendants' motion. Defendants Wagner and Hilton did provide some medical informatin an exhibit attached to their motion (Doc. 32-4), but these records show nothing more than that Ms. Smith visited a physician. They do not show any long-term injury or treatment plan. Moreover, apparently at least one physician told

8

Ms. Smith that her pain was just a "part of getting older." (Smith Deposition, p. 111; Doc. 33-12 at 29). Even viewing the evidence in the light most favorable to Ms. Smith, her injuries appear quite minor. However, we must evaluate them in the context of the force used – if such force was clearly unnecessary or excessive, then these injuries will be considered more than de minimis. See, e.g., Schmidt v. Gray, 399 Fed. App'x 925, 928 (5th Cir. 2010) (bruised fingers more than de minimis when plaintiff was not resisting arrest and force used was deployed maliciously, not for any legitimate law enforcement purpose).

Accepting Ms. Smith's factual allegations as true, she attempted to leave the RPSO <u>after</u> Sgt. Hebb told her she was under arrest. Then, after Sgt. Hebb apprehended her and forced her against a wall in the RPSO, she resisted, both by attempting to crawl away from Sgt. Hebb in order to grab her wig and by refusing to place her hands behind her back. At one point while Ms. Smith was attempting to crawl away from Sgt. Hebb, Sgt Hebb hit her in the back "a couple" of times. All of this resulted in her back and neck "really hurting" and feeling "sore." We cannot say that any force Sgt. Hebb used, which she deployed in order to attempt to prevent Ms. Smith from evading and resisting arrest, was clearly excessive or unnecessary. In this context, Ms. Smith's injuries are de minimis, and her excessive force claim fails. Therefore, we find that Sgt. Hebb is entitled to judgment as a matter of law on the Fourth Amendment claim made against her.

### D.  Punitive Damages

Ms. Smith claims punitive damages from all Defendants to the extent each is sued in their individual capacities. Under § 1983, punitive damages are discretionary and "may be awarded only if the official conduct is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights." Sockwell v. Phelps, 20 F.3d 187, 192 (5th Cir. 1994) (internal quotation marks omitted). Ms. Smith has shown no facts demonstrating evil intent or reckless or callous indifference. The facts presented to this Court show that the RPSO (and therefore Sheriff Hilton and former Sheriff Wagner) trained Sgt. Hebb adequately and did not have a custom or policy of violating constitutional rights.  The facts also show that Sgt. Hebb did not use excessive force to effect her arrest of Ms. Smith.  Therefore, summary judgment will be granted to preclude all claims for punitive damages against all Defendants.

### E.  State Law Claims

Because we dismiss all of Ms. Smith's claims under 42 U.S.C. § 1983, which are the only claims over which we have original jurisdiction, we decline to exercise supplemental jurisdiction over her state law claims.  28 U.S.C. § 1367(c)(3). Therefore, those claims are dismissed without prejudice.

10

### III. Conclusion

For the foregoing reasons, For the following reasons, Defendants Hilton and Wagner's motion (Doc. 32) will be **GRANTED IN PART,** and Defendant Hebb's motion (Doc. 33) will be **GRANTED IN PART.** All of Plaintiff Smith's federal law claims are **DISMISSED WITH PREJUDICE**, and all state law claims are **DISMISSED WITHOUT PREJUDICE**.

SIGNED on this 10th day of August, 2015 at Alexandria, Louisiana.

DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT